# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.) No. 23-ICA-233**       (JCN: 2018016155)

**CONNIE TITUS,**
**Claimant Below, Respondent**

**FILED**
**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc.[1] ("Murray") appeals the May 4, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Connie Titus filed a timely response.[2] Murray did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Ms. Titus no additional permanent partial disability ("PPD") award, instead granting her an additional 9% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 12, 2018, while employed by Murray, Ms. Titus sustained multiple injuries when she was involved in a vehicle collision in the course of her employment. Ms. Titus' compensable injuries include strain of the muscle, tendon, and fascia of the lower back; strain of the muscle, tendon, and fascia of the right hip; right knee sprain; sprain of the ligaments of the cervical spine; sprain of the left shoulder joint; lesion of the superior

---

[1] For reasons not readily apparent in the appendix record, petitioner's counsel has substituted "Marshall County Coal Resources, Inc." for the employer that was identified below as "Murray American Energy, Inc." Consistent with the action of the Supreme Court of Appeals of West Virginia in *Delbert v. Murray American Energy, Inc.*, __ W. Va. __, __ n.1, 880 S.E.2d 89, 91 n.1 (2022), we use the name of the employer as designated in the order on appeal: Murray American Energy, Inc.

[2] Murray is represented by Aimee M. Stern, Esq. Ms. Titus is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq.

glenoid labrum of the left shoulder; bicipital tendinitis of the left shoulder; and impingement syndrome of the left shoulder.

Ms. Titus was evaluated by David Soulsby, M.D., several times. On July 31, 2019, Dr. Soulsby opined that Ms. Titus had reached maximum medical improvement ("MMI") for her compensable left shoulder, cervical spine, and lumbar injuries. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), and West Virginia Code of State Rules § 85-20 (2006) ("Rule 20"), Dr. Soulsby opined that Ms. Titus had 8% whole person impairment ("WPI") related to the cervical spine; 8% WPI related to the lumbar spine; and 10% WPI related to the left shoulder. Dr. Soulsby apportioned 4% of the cervical spine impairment, and 4% of the lumbar spine impairment to preexisting degenerative disc disease based on imaging evidence; and 5% of the left shoulder impairment to preexisting arthritis based on imaging evidence. After apportionment, Dr. Soulsby found that Ms. Titus had 13% WPI related to the compensable injury.

On January 2, 2019, Dr. Soulsby found that Ms. Titus had reached MMI for her compensable right hip injury. Using the *Guides*, Dr. Soulsby opined that Ms. Titus had 2% WPI related to the right hip. Dr. Soulsby combined this 2% impairment rating with the previously calculated impairment ratings and opined that Ms. Titus had a total WPI of 15% related to her compensable injuries. In a report dated March 8, 2019, Dr. Soulsby opined that Ms. Titus had 4% WPI related to her right knee. Dr. Soulsby combined this 4% impairment rating with the previously calculated impairment ratings and opined that Ms. Titus had a total WPI of 18% related to her compensable injuries.

On March 16, 2019, the claim administrator issued an order granting Ms. Titus an 18% PPD award based on the reports of Dr. Soulsby. The record does not indicate whether Ms. Titus protested this order.

Joseph Grady, M.D., issued a report on November 15, 2021, regarding his evaluation of Ms. Titus. Using the *Guides* and Rule 20, Dr. Grady found that Ms. Titus had 6% WPI related to the cervical spine; 6% WPI related to the lumbar spine; 13% WPI related to the left shoulder, and 2% WPI related to the right hip. Dr. Grady found no ratable impairment for the right knee strain. Dr. Grady apportioned 2% of the cervical spine impairment, and 2% of the lumbar spine impairment to preexisting degenerative disc disease based on imaging evidence; and 5% of the left shoulder impairment to preexisting arthritis based on imaging evidence. After apportionment and combining the remaining impairment ratings, Dr. Grady found that Ms. Titus had 18% WPI related to her compensable injuries.

On November 21, 2021, the claim administrator issued an order granting no additional PPD award. The claim administrator found that Ms. Titus had been fully compensated by her prior 18% PPD award based on the reports of Drs. Soulsby and Grady.

Ms. Titus was subsequently evaluated by Bruce Guberman, M.D., detailed by a report dated June 3, 2022. Dr. Guberman opined that Ms. Titus was at MMI for her compensable injuries and required no further treatment. Using the *Guides* and Rule 20, Dr. Guberman found that Ms. Titus had 8% WPI related to the cervical spine; 8% WPI related to the lumbar spine; and 13% WPI related to the left shoulder. These impairments were combined and converted to find 27% total WPI related to the compensable injury. Dr. Guberman noted the imaging evidence of preexisting degenerative disc disease in Ms. Titus' cervical and lumbar spine, and preexisting arthritis in her left shoulder. However, Dr. Guberman determined that there was no reasonable basis to apportion for the preexisting conditions because there was no evidence of Ms. Titus having any symptoms or treatment for the preexisting conditions and no evidence that the preexisting conditions affected her activities of the daily living or ability to work prior to her compensable injury. As Ms. Titus had already been granted an 18% PPD award, Dr. Guberman opined that she should receive an additional 9% PPD award, for a total of a 27% PPD award.

On May 4, 2023, the Board issued an order reversing the claim administrator's order, which granted Ms. Titus no additional PPD award, and instead granting Ms. Titus an additional 9% PPD award. The Board found that Ms. Titus had established that she was entitled to an additional 9% PPD award for a total of a 27% PPD award based on the report of Dr. Guberman. Murray now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Murray argues that Drs. Soulsby's and Grady's apportionment of some of Ms. Titus' impairment to her preexisting conditions is "consistent with the significant nature of the degenerative conditions." Murray further argues that this apportionment is supported by the documentation of Ms. Titus' degenerative preexisting conditions by diagnostic testing and her surgeon's operative findings. We disagree.

In *Duff*, this Court found that:

The Supreme Court of Appeals of West Virginia has previously recognized that radiographic evidence of degenerative changes alone is not sufficient to allow apportionment for preexisting injury. There must be something more, some evidence of a detrimental effect on work or the activities of daily living. Where such evidence of impairment is lacking, the Court has found that apportionment was not appropriate. *See Galaxy Distributing of WV, Inc. v. Spangler*, No. 19-0803, 2020 WL 6559079 (W. Va. Nov. 6, 2020) (memorandum decision) (unanimous decision) (the Board did not err in finding that apportionment was arbitrary and speculative where preexisting changes to right shoulder did not appear to affect the claimant's work or daily activities); *Minor v. West Virginia Division of Motor Vehicles*, No. 17-0077, 2017 WL 6503113, at *2 (W. Va. Dec. 19, 2017) (memorandum decision) (3-2 decision reversing Board of Review decision apportioning for preexisting condition) ("While the 2004 x-ray may have shown degenerative changes [to the right knee], those changes did not appear to affect Mr. Minor's ability to work or his activities of daily living. Therefore, we agree with the Office of Judges' findings that … apportionment of the impairment rating due to the 2004 x-ray was improper….").

*Duff* at 558, 882 S.E.2d at 924.

Here, the Board found that Dr. Guberman's report was the most reliable because he did not apportion for asymptomatic preexisting conditions. The Board further found that the reports of Drs. Soulsby and Grady were found to be unpersuasive because they apportioned for asymptomatic preexisting degenerative disc disease based solely on imaging evidence. Ultimately, the Board found that Ms. Titus was entitled to an additional 9% PPD award, for a total of a 27% PPD award, based on Dr. Guberman's report.

Upon review, we conclude that the Board properly applied *Duff* in its analysis and was not clearly wrong in finding that it was inappropriate to apportion for Ms. Titus' preexisting conditions when the conditions were asymptomatic, did not affect her life or work, and were only documented by imaging evidence. Further, the Board was not clearly wrong in finding that Dr. Guberman's report was more persuasive than the reports of Drs. Soulsby and Grady, based on Dr. Guberman appropriately refraining from apportioning for asymptomatic preexisting conditions. Finally, the Board was not clearly wrong in

4

determining that Ms. Titus is entitled to an additional 9% PPD award based on Dr. Guberman's report.

Accordingly, we affirm the Board's May 4, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen